IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | HONORABLE JEROME B. SIMANDLE |
| v. | Criminal Action No. 13-121-2 (JBS) |
| DANIEL CARDILLO, | |
| Defendant. | **OPINION** |

APPEARANCES:

Paul J. Fishman, United States Attorney
    By: Jacqueline Carle, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
    Attorney for the United States

Justin Loughry, Esq.
LOUGHRY & LINDSAY LLC
330 Market Street
Camden NJ 08102
    Attorney for Defendant Daniel Cardillo

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Defendant Daniel Cardillo stands accused of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 & 1349 & 371. The Superseding Indictment, filed on March 20, 2013, alleges that Cardillo was a "straw purchaser" of real estate in a larger conspiracy to profit from the sale of ocean town condominiums by obtaining mortgage loans for unqualified

borrowings using fraudulent loan applications, fraudulent HUD-1 Settlement Statements, and other documents.

Before the Court are motions in limine by United States [Docket Items 39, 44, and 68] and Defendant Cardillo [Docket Items 40 & 42].[1] The Court will address each in turn.

## II. BACKGROUND

The Superseding Indictment identifies 26 allegedly fraudulent real estate transactions from 2006 to 2008 that followed two general patterns. The first pattern involved same-day closings, in which Defendant John Leadbeater would purchase the property "dry," meaning that little or no funds were produced for the transaction, and then a straw purchaser would purchase the same property on the same day at a substantially increased sales price, using false documents. (Superseding Indictment [Docket Item 15] ¶ 19.) According to the Superseding Indictment, Defendant Cardillo served as one of several straw purchasers, who

> would neither pay deposits or closing costs to acquire the properties; would not have to make monthly mortgage payments after they owned the properties; would receive an up-front payment after the closing for allowing their names and credit information to be used in connection with the transaction; and/or would not have to manage the properties . . . .

---

[1] A separate Opinion and Order was entered on February 10, 2015, adjudicating the motions as they pertain to Defendant Leadbeater. [Docket Items 76 & 77.]

(Id. ¶ 12) (original formatting removed). Leadbeater allegedly directed title clerks to prepare documents for the closings, including fraudulent HUD-1 Uniform Settlement Statements signed by the straw purchasers "reflecting deposits and funds brought to closing by the Straw Purchaser that had never been made." (Id. ¶ 19(e).) The title companies allegedly distributed proceeds of fraudulently obtained mortgage loan to the conspirators by wiring funds into an account controlled by Leadbeater or by issuing a check made payable to one of Leadbeater's companies, such as BCJL Enterprises or Lead 1 Investments. (Id. ¶ 19(f).)

The second pattern involved fraudulent line-item payments off of the HUD-1 Settlement Statements. (Id. ¶ 20.) According to the Superseding Indictment, Leadbeater and co-conspirators recruited a straw purchaser to buy real estate "at a sales price that included a substantial increase to cover a pay-out" to Leadbeater or his co-conspirators. (Id. ¶ 20(b).) Again, the straw purchasers obtained loan applications with false documentation, and attended closings at which Leadbeater directed the title clerks to prepare documents and distribute proceeds to Leadbeater or his companies, or to a co-conspirator's company. (Id. ¶ 20(c)-(e).)

At oral argument, the Government represented that Cardillo is alleged to have participated in only one of the 26 fraudulent

real estate transactions: the purchase of a condominium unit at 620 West Burke Avenue in Wildwood, N.J. The Superseding Indictment lists the closing date of that purchase as December 7, 2007, and the "lender" as "Country Wide Home Loans," but, according to Cardillo, he purchased the unit on or about December 13, 2007. (Compare Superseding Indictment at 17 with Cardillo Mot. [Docket Item 40-1] at 2.) The Government alleges that co-conspirators Ernesto Rodriguez and Michelle Martinez, who both worked as mortgage brokers for Strong Point Mortgage, processed several of the fraudulent loan applications, including the Cardillo application. (Superseding Indictment at 2; Gov't Opp'n [Docket Item 45] at 15.)  A co-conspirator with the initials J.M. served as the title agent for Shore Title Agency, and was involved in several of the transactions, including Cardillo's and at least four others. (Superseding Indictment at 4.) Although the Government does not allege that Cardillo had personal contact with all of the co-conspirators, those involved in the Cardillo transaction allegedly participated in other fraudulent transactions with a wider circle of co-conspirators, including Paul Watterson, who recruited straw purchasers, and Deborah Hanson, a mortgage broker. The Government contends that Defendant Leadbeater received approximately $159,000 as a kickback in the Cardillo transaction, and that witnesses will testify that Cardillo was upset because he did not receive a

4

large kickback he was promised. Cardillo still resides in the
unit that he purchased through allegedly fraudulent means.

Following oral argument, the Government filed a
supplemental brief [Docket Item 53] and a motion to admit
evidence of several audio taped conversations between Cardillo
and a confidential informant that occurred after the charged
conduct. [Docket Item 68.][2]

Defendant Cardillo filed several motions in limine and a
motion to dismiss, joined others brought by Defendant
Leadbeater, and opposed motions filed by the Government.
Specifically, Cardillo seeks disclosure from the Government of
certain material, including any potentially exculpatory evidence
known to the Government, and prior bad act evidence that the
Government intends to use. He seeks an order for Government
agents to preserve and produce rough notes of Government
witnesses and for the Government to produce original documents
as evidence. Cardillo also seeks to dismiss Count I of the
Superseding Indictment because it is time-barred and because it

---

[2] The Government also moved to sever Defendant Cardillo from the
Leadbeater trial, "[o]ut of an abundance of caution and to avoid
a potentially unfair trial," because the degrees of culpability
for Leadbeater and Cardillo vary dramatically. [Docket Item 54.]
The motion was granted, and the Court ordered the Leadbeater
trial to proceed first. [Docket Item 60.] After his trial
commenced, Leadbeater subsequently plead guilty to one count of
conspiracy to commit wire fraud. (Leadbeater Plea Agreement
[Docket Item 91].) Trial for Cardillo is scheduled to begin June
8, 2015.

is duplicitous, meaning that it charges more than one conspiracy in a single count, in violation of Fed. R. Crim. P. 8(a). He also brings a motion to strike surplusage from the Superseding Indictment. He also brings a cross-motion to dismiss "for absence of allegations/evidence that Daniel Cardillo defrauded the 'victim' lender." (Notice of Cross-Motion [Docket Item 42] at 2.)

## III. DISCUSSION

### A. Cardillo's Omnibus Pre-trial Motion

Cardillo's pre-trial motion [Docket Item 40] seeks to dismiss the indictment on statute of limitations grounds and on the grounds that Count I is duplicitous. In the alternative, Cardillo requests a bill of particulars and seeks disclosure of 404(b) evidence. Cardillo also joins Defendant Leadbeater's pre-trial motion [Docket Item 38]. Several issues raised by Cardillo have already been resolved by the Court's Opinion in Leadbeater, (see Feb. 10, 2015 Opinion ("Opinion") [Docket Item 76]) and the Court incorporates those decisions by reference, where applicable.

#### 1. Duplicity of Count I

Cardillo makes the same argument as Leadbeater and contends that Count I, which lists 26 separate real estate transactions, actually "charges a series of separate and distinct conspiracies lumped together in this one count in violation of Fed. R. Crim.

6

P. 8(a)." (Cardillo Mot. at 8.) The Court resolved Defendants'
motions in its Leadbeater Opinion of February 10, 2015. (See
Opinion at 5-12). The Court incorporates that discussion here
and holds that Count I is not duplicitous as a matter of law.
After the prosecution rests, Cardillo may renew this motion, if
he has grounds to establish that the evidence proved multiple
conspiracies and that a substantial right of his was prejudiced
by the variance between the proof and the indictment. At this
time, the Court will deny Cardillo's motion without prejudice.

### 2. Statute of limitations

Defendant Cardillo argues that this prosecution is barred
by the statute of limitations.

Generally, for non-capital offenses, a five-year statute of
limitations applies to federal criminal prosecutions. See 18
U.S.C. § 3282(a) ("no person shall be prosecuted, tried, or
punished for any offense, not capital, unless the indictment is
found or the information is instituted within five years next
after such offense shall have been committed"). However, 18
U.S.C. § 3293 extends the statute of limitations to 10 years for
financial institution offenses, including a conspiracy to commit
wire fraud that "affects a financial institution" under 18
U.S.C. § 1343, as is charged against Defendants. See 18 U.S.C. §
3293(2) ("No person shall be prosecuted, tried, or punished for
. . . a conspiracy to violate . . . section 1341 or 1343, if the

offense affects a financial institution . . . unless the indictment is returned or the information is filed within 10 years after the commission of the offense."); 18 U.S.C. § 20 (defining "financial institution"). In 2009, Congress amended the definition of "financial institution" to include "a mortgage lending business . . . or any person or entity that makes in whole or in part a federally related mortgage loan." 18 U.S.C. § 20(10) (2009). Cardillo argues that Countrywide Home Loans was not a "financial institution" within this statutory framework in 2007, the time of the relevant transactions. The Government concedes that the Cardillo transaction "does not appear to involve an FDIC insured bank." (Gov't Supp. Br. [Docket Item 53] at 3.) Cardillo contends that the charge of conspiracy must be dismissed because the only transaction he is alleged to have engaged in did not involve a "financial institution" and falls outside the five-year limitations period:

> [T]he indictment mentions only CW Home Loans, Inc. as an entity that provided the funds for Cardillo's purchase of the West Burke Ave unit, and it mentions no other entity. Since Countrywide Home Loans Inc., was not itself a financial institution and the indictment identifies no other such candidate for fulfilling the role of an 'affected' financial institution in the Cardillo transaction, the enlarged statute of limitations in Section 3293 cannot apply.

(Cardillo Mot. at 17; see also First Cardillo Mem. [Docket Item 71] at 11-13.)

The Court's reasoning in the Leadbeater Opinion applies equally here. (See Opinion at 13-15.) Even assuming that Countrywide Home Loans was not a "financial institution," the charge of conspiracy against Cardillo falls within the statute of limitations. At least six of the charged 26 transactions involved FDIC insured banks as the mortgage originator, which clearly qualify as transactions affecting financial institutions and are governed by a 10-year limitations period.[3] (Gov't Opp'n [Docket Item 45] at 21; Superseding Indictment at 15-17.) None of the transactions identified in the Superseding Indictment occurred more than 10 years before the Superseding Indictment was filed in March 20, 2013. One transaction is timely under even the five-year statute of limitations. (See Superseding Indictment at 17, noting date of last transaction as March 26, 2008.) Because the transaction involving Countrywide Home Loans is part of the conspiracy charged in Count One, and at least one of the fraudulent real estate transactions in Count One is timely under either limitations period, the charge of conspiracy

---

[3] The properties are: 5501 Atlantic Avenue, Units 204, 205 and 207; 4601-05 Niagra Avenue, Unite 200; 411 E. Buttercup Road, Unit 103; and 309 E. Poplar Avenue. The mortgages were obtained through IndyMac Bank, FSB; Wells Fargo Bank, N.A.; Washington Mutual Bank; JP Morgan Chase; and American Partners Bank. (Superseding Indictment at 15-17.)

in Count I is timely.[4] Cardillo's motion to dismiss Count I as
untimely is denied.

### 3. Bill of particulars

Defendant Cardillo moves, under Fed. R. Crim. P. 7(f), for
a bill of particulars specifying (1) every act or omission, by
date, time, and location that Defendant is alleged to have
committed from December 13, 2007 that evidences any
participation in or connection to the March 26, 2008
transaction;[5] and (2) the acts or omissions, by date, time, and
location Defendant is alleged to have committed in connection
with the 25 transactions in which he was not a purchaser, acts
or omissions by Defendant which aided or furthered those
transactions, and the persons with whom he committed said acts.

Federal Rule of Criminal Procedure 7(f) permits the court,
in its discretion, to "direct the filing of a bill of
particulars." Fed. R. Crim. P. 7(f); United States v. Fischbach
and Moore, Inc., 576 F. Supp. 1384, 1388 (W.D. Pa. 1983). The
purpose of a bill of particulars is to inform the defendant of
the nature of the charge against him with sufficient precision
to enable him to prepare for trial, to minimize the danger of

---

[4] It is incumbent on the Government to prove at trial that at
least one overt act in furtherance of the conspiracy was
undertaken within the limitations period, and this will be
included in the Jury Instructions.
[5] The property is 415 Heather Road a/k/a 5700 Ocean Ave., Unit
306, Wildwood Crest, NJ.

surprise during trial, and to protect him against a second prosecution for an inadequately described offense. United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971) (quoting United States v. Tucker, 262 F. Supp. 305, 308 (S.D.N.Y. 1966)), cert. denied sub nom., 423 U.S. 858 (1975); United States v. Eisenberg, 773 F. Supp. 662, 689 (D.N.J. 1991).

Rule 7(f) was amended in 1966 "to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions on individual cases." Fed. R. Crim. P. 7(f) advisory committee's note. Notwithstanding this liberalization, a bill of particulars is not a discovery tool "by which defendants obtain disclosure of every detail of the theory and preparation of the Government's case." Fischbach, 576 F. Supp. at 1389. Only where the indictment is too vague or indefinite to accomplish the objectives above is a bill of particulars necessary. Addonizio, 451 F.2d at 64.

The Court will deny Defendant's motion for a bill of particulars. The Third Circuit has held that a defendant is not entitled to a list of uncharged overt acts and uncharged criminal conduct, nor is he entitled to a list of the identities of Government witnesses. United States v. Di Pasquale, 740 F.2d 1282, 1294 (3d Cir. 1984); United States v. Armocida, 515 F.2d

49, 54 (3d Cir. 1975); Addonizio, 451 F.2d at 62; United States
v. Vastola, 670 F. Supp. 1244, 1270 (D.N.J. 1987).

Cardillo's request in this case is similar to the
defendant's request in United States v. Armocida. There, the
defendant requested a bill of particulars listing "any other
overt acts committed, setting forth when, where and how it was
committed, which were not set forth in the indictment." The
district court denied his request, and the defendant argued on
appeal that he was surprised and unfairly prejudiced at trial by
the testimony of a witness who was not listed in the indictment
as someone to whom he allegedly distributed heroin. Finding no
abuse of discretion, the Third Circuit explained that a "request
for the 'when, where and how' of any overt acts not alleged in
the indictment is "tantamount to a request for 'wholesale
discovery of the Government's evidence,' which is not the
purpose of a bill of particulars under Fed. R. Crim. P. 7(f)."
Armocida, 515 F.2d at 54 (citing Addonizio, 451 F.2d at 64).

The Superseding Indictment states that Cardillo was a straw
purchaser in a conspiracy to defraud banks and to obtain
property by means of materially false and fraudulent pretenses,
and describes the role that straw purchasers played in the
conspiracy. The dates, locations, and funds released for each of
26 transactions are also listed in the Indictment, and the
Government has already represented at oral argument that

Cardillo is alleged to have participated in only one of the 26 fraudulent real estate transactions: the purchase of a condominium unit at 620 West Burke Avenue in Wildwood, N.J. The Indictment is not too vague that it does not fairly inform Cardillo of the nature of the charges against him, and the information Cardillo has already received is sufficient to enable him to prepare for trial. Cardillo is not entitled to a detailed preview of Defendant's case at trial and need not be told all the overt acts the Government will prove in establishing the conspiracy and Cardillo's precise role within it. See, e.g., United States v. Zolp, 659 F.Supp. 692, 706 (D.N.J. 1987) (denying requests for bill of particulars seeking, among other things, the names and addresses of co-conspirators and details about the conspiracies and conspirators in which the defendant was charged with participating); United States v. Boffa, 513 F. Supp. 444, 485 (D. Del. 1980) United States v. Heldon, 479 F.Supp. 316, 323 (E.D. Pa. 1979) (denying request for bill of particulars brought by defendants charged with drug conspiracy who sought specific times and places drugs were allegedly distributed and overt acts in furtherance of conspiracy).

The Court will accordingly deny Cardillo's request.

### 4. Immediate disclosure of <u>Brady</u> material

Defendant's request for immediate production of <u>Brady</u> material (Cardillo Mot. [Docket Item 40-1] at 2 (joining the Leadbeater motions)) was denied as moot in the Court's February 10, 2015 Opinion. (Opinion at 15.) Defendant's request is therefore denied as moot.

### 5. Disclosure of <u>Giglio</u> & <u>Jencks</u> material

Defendant's request for <u>Giglio</u> and <u>Jencks</u> material to be provided 30 days before trial (Cardillo Mot. at 2) was resolved in the Court's February 10, 2015 Opinion. (Opinion at 15-16.) The Court ordered the Government to produce <u>Giglio</u> and <u>Jencks</u> material at least 14 days before the start of the trial. If <u>Giglio</u> and <u>Jencks</u> material have not yet been produced, the Government is ordered to produce the material ten (10) days before the start of trial.

### 6. Preserve rough interview notes of all Government witnesses

Defendant's request that the Government preserve and produce all rough interview notes of Government witnesses (Cardillo Mot. at 2 (joining the Leadbeater motions)) was addressed in the Court's earlier Opinion in Leadbeater. (Opinion at 16.) Defendant's request is accordingly denied as moot.

### 7. Disclosure of 404(b) evidence

Defendants' request for early disclosure of Fed. R. Evid. 404(b) material (Cardillo Mot. at 21-22) was resolved as moot in

14

the Court's earlier Opinion in Leadbeater (Opinion at 17.)
Accordingly, Defendant's request is denied as moot.

### 8.   Use of original documents

In its Leadbeater Opinion, the Court denied Defendants'
request for production of original documents without prejudice.
(Opinion at 17.) The Government was ordered to make the
documents available for inspection, and defense counsel is
allowed to raise any specific disputes about chain of custody or
authenticity in a pretrial motion. To the extent Cardillo raises
that argument in his motion, it is denied without prejudice.

### 9.   Surplusage in the indictment

Defendant's objection to "surplusage" in Paragraph 9 of the
Indictment was addressed in the Court's earlier Opinion (Opinion
at 17-18), the discussion of which the Court incorporates
herein. The Government agreed to submit a consent order with new
language replacing the quantification of losses on page 11 of
the Superseding Indictment with a statement that $13 million
worth of fraudulent loans were funded. Accordingly, the motion
is denied without prejudice. The Government shall submit a
proposed consent order detailing the new language five (5) days
before the start of the trial.

### B.  The Government's motions in limine [Docket Item 39 & 68] and Defendant's cross motion to dismiss [Docket Item 42-1]

The Government moves to preclude Defendant from raising a
jury nullification argument, and from introducing any evidence

or argument that mortgage lenders' alleged negligence in approving mortgage loan applications provides a defense to Defendants' conduct. Defendant opposes the Government's motions and files a cross motion to dismiss the indictment because it does not allege that Cardillo made material misrepresentations that he knew were being relied upon by the victim lenders. The Court addressed these arguments in its Leadbeater Opinion (see Opinion at 18-26) and incorporates those discussions here.

The Government also seeks to admit several audio recordings of conversations between Cardillo and a confidential informant in which Cardillo allegedly admits to receiving money from Leadbeater and they allegedly discuss the possibility of future transactions.

### 1. Jury nullification

The Government's motion to preclude Defendant from raising a jury nullification argument was addressed by the Court in its Leadbeater Opinion (Opinion at 18-19), the discussion of which the Court incorporates herein. The Court will grant the Government's motion insofar as it precludes Defendant from arguing the theory of nullification to the jury. This holding does not in any way inhibit Defendant from cross-examining Government witnesses and from pursuing questions to reveal bias, including whether Government witnesses were prosecuted or made deals with prosecutors in exchange for their testimony.

16

### 2. Blaming the victim lenders and referring to the foreclosure crisis; Defendant's cross motion to dismiss

The Government's motion to foreclose Defendant from arguing that the victim lenders were negligent or intentionally failed to scrutinize the loan applications at issue in this case and to prevent Defendant from arguing about or adducing evidence of the foreclosure crisis was addressed by the Court's Opinion in Leadbeater. The Court will incorporate its previous discussion and holding here. (Opinion at 19-25.) Defendant may not argue in opening statements, or elicit testimony on direct examination, about the lack of diligence on the part of the victim lenders. However, if the Government witnesses testify that they relied on the representations in the loan applications, Defendant may cross examine the witnesses on this reliance.

Cardillo argues in his cross motion that the Superseding Indictment must be dismissed because it does not allege any facts showing that the victim lenders actually relied upon Cardillo's misrepresentations in the loan applications, or that Cardillo knew the victim lenders would rely upon those misrepresentations. (Cardillo Opp'n [Docket Item 42-1] at 11-13.) Cardillo argues that the Government has in other pleadings taken contrary positions, alleging that the victim lenders "abandoned all underwriting and risk assessment and in fact was

17

only interested in approving and making loans, in order to sell them . . . ." (Cardillo Opp'n at 12.)

For the reasons set forth in the Court's earlier Opinion, the Court will also deny Cardillo's cross-motion to dismiss.

### 3. 404(b) evidence against Cardillo

The Government seeks to admit multiple recorded conversations between Daniel Cardillo and a confidential informant in December 2008 and January 2009 about the allegedly fraudulent transaction involving the 620 West Burke Ave. property and future transactions. (First Gov't Mot. [Docket Item 39] at 38; Second Gov't Mot. [Docket Item 68] at 9.)[6] In the recordings, Cardillo indicates that he received the down payment for the sale from Leadbeater for the March 2007 closing, and that another co-conspirator, Ernesto Rodriguez, could be involved in potential future real estate transactions. (First Gov't Mot. at 40; Tr. Dec 16, 2008 at 7, 20; Tr. Jan. 27, 2010 at 9.) The Government argues that the uncharged criminal conduct is admissible because it is intrinsic to the charged crime. Specifically, the Government argues that the conversations directly prove (1) that Cardillo conspired with Leadbeater and

---

[6] At oral argument, the parties agreed to postpone any ruling on the Government's motion to admit 404(b) evidence [Docket Item 39] until transcripts of the recordings were available to Cardillo and the Court. After transcripts were turned over to Cardillo, the Government renewed its motion to admit the audio recordings. (Second Gov't Mot. [Docket Item 68].)

others to obtain mortgage funds for the December 2007
transaction involving the property at 620 W. Burke Ave; (2) that
Cardillo knowingly signed a false HUD-1 settlement statement;
and (3) that he acted knowingly. (Second Gov't Mot. at 9.) The
Government also contends that the evidence is admissible under
Rule 404(b) because it tends to establish Cardillo's knowledge,
intent, plan, and absence of mistake.

Defendant argues that the evidence is not intrinsic because
it does not depict any illegal scheme, does not demonstrate the
continuation of any conspiracy, and does not demonstrate the
involvement of Leadbeater or Cardillo in any alleged scheme.
Defendant argues that the conversations were taped approximately
nine months after the last charged transaction in the
Superseding Indictment and thus does not directly prove the
existence of a conspiracy which ended in March 2008. Defendant
also contends that the evidence is inadmissible under Rule
404(b) because it does not tend to prove Cardillo's intent or
conduct at the time of the alleged crime.

Federal Rule of Evidence 404(b) prohibits the introduction
of evidence of other crimes, wrongs, or acts that might
adversely reflect on the defendant's character, unless that
evidence bears upon another relevant issue in the case. "[T]he
threshold inquiry a court must make before admitting similar
acts evidence under Rule 404(b) is whether that evidence is

19

probative of a material issue other than character." United
States v. Sriyuth, 98 F.3d 739, 745-46 (quoting Huddleston v.
United States, 485 U.S. 681, 686 (1988)). The admission of prior
"bad acts" under Rule 404(b) must follow four guidelines: (1)
the evidence must have a proper purpose under Rule 404(b); (2)
it must be relevant; (3) its probative value must outweigh its
potential for unfair prejudicial effect under Rule 403; and (4)
the Court must instruct the jury to consider the evidence only
for the limited purpose for which it is admitted. United States
v. Console, 13 F.3d 641, 659 (3d Cir. 1993).

     Evidence that is considered intrinsic to the crime,
however, is exempt from the requirements of Fed. R. Evid.
404(b). See Fed. R. Evid. 404(b) advisory committee's note (Rule
404(b) "does not extend to evidence of acts which are
'intrinsic' to the charged offense."); Green, 617 F.3d at 245;
United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (noting
that intrinsic evidence "'may be extremely prejudicial to the
defendant but the court would have no discretion to exclude it
because it is proof of the ultimate issue in the case.'"
(quoting 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal
Practice and Procedure § 5239, at 450-51 (1978))). In the Third
Circuit, evidence of a defendant's uncharged criminal conduct is
intrinsic to the charged criminal conduct if (1) the conduct
proves the charged crime, or (2) if the act is performed

20

contemporaneously with the charged crime and facilitates the commission of the charged crime. United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010) (citing United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000), cert denied, Green v. United States, 131 S. Ct. 363 (2010); United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002) ("[A]cts are intrinsic when they directly prove the charged conspiracy.").

The Government describes several excerpts of the recordings in its brief. (Second Gov't Mot. at 5-8.) In a December 11, 2008 conversation about potentially purchasing properties in Wildwood, New Jersey, the confidential informant, SC, asks Cardillo about the properties, and Cardillo states, "Hang on . . . the Surf units three or four bedrooms facing the ocean. The complex has a pool." He then says, "We'll make ten if we split ten grand on each ya know on this kinda client I think we're doin' alright." (Tr. Dec. 11, 2008, at 7.)

In a December 16, 2008 conversation about the 620 West Burke Ave. property, Cardillo states,

> DC: Mine, no it was all about the marine. Mine was a
> wham bam. I figured it was I bought it on paper in 560.
> SC: Okay.
> DC: I figured the marinas up there at six, even if it's
> six.
> SC: Yeah.
> DC: I didn't put any money down so ya know twenty
> percent, twenty percent profit right there.
> SC: Did the builder put the money down then so you could
> keep that equity were you able to do a home equity line
> or anything?

```
. . . .
DC: He was, I did it was a primary.
SC: Okay.
DC. So the primary, but it was a balloon one so it was
seven and three quarters.
SC: Zero down payment?
DC: No. Twenty percent. Johnny put the twenty percent
down.
```

(Tr. Dec. 16, 2008 at 7.) Defendant admits that "Mr. Cardillo tells [the confidential informant] that Leadbeater furnished the money for the buyer's funds at closing," but points out that Cardillo also states in the same conversation that after the closing, Leadbeater insisted that Cardillo owed him $26,000:

```
DC: (UI) [unintelligible] he told me he wasn't gonna
make any money (UI) I'd buy that fuckin' condo ya know
no money outta my pocket, everything's great.
SC: How much money did ya get back?
DC: What? The story is I walk outta there and he goes he
goes alright man don't worry about it now but you owe me
twenty six thousand. I'm like whoe . . . I said dude.
SC: It's your cousin though.
DC: No money outta pocket you weren't gonna make any
money off of me. I said I wouldn't of done it but I ya
know gonna owe ya money.
```

(Tr. Dec 16, 2008 at 20.)

Finally, in a January 28, 2009 conversation, Cardillo and the confidential informant discuss the possibility of using "Ernie" in potential future real estate transactions, referring to an alleged co-conspirator, Ernesto Rodriguez. (Tr. Jan. 27, 2010 at 9.)

The Court first turns to the question of whether the evidence is intrinsic to the charged crime. The conversations

22

between Cardillo and the confidential informant occurred in
December of 2008 and January of 2009, approximately nine months
after the date of the last real estate transaction listed in the
Superseding Indictment, and one year after the closing in
December of 2007 of 620 West Burke Avenue. The Government
charges in the Superseding Indictment that the conspiracy
continued through August 2011. (See Superseding Indictment at
11.) However, Cardillo argues that the evidence is extrinsic to
the charged crime because it occurred months after the
conspiracy ended. He argues that the Government has presented no
proof that the conspiracy continued beyond the last charged
transaction. (See First Cardillo Mem. [Docket Item 71]; Second
Cardillo Mem. [Docket Item 72] at 13.) See, e.g., United States
v. Butch, 48 F. Supp. 2d 453, 458 (D.N.J. 1999) (holding that
events which occurred five months before the conduct in the
Indictment were too far removed and distinct to be considered
intrinsic to the charged crime of conspiracy to distribute and
possess with intent to distribute oxycodone).

When one examines the transcripts of the consensual
recordings from the various dates from December 4, 2008 through
March 4, 2009,[7] the conversations fall into two broad categories.

_____

[7] The dates on many of the proposed transcripts are mislabeled,
reflecting conversations on various dates in December of 2013,
and January, February, and March of 2014. The correct dates can
only be in December of 2008 and January, February, and March of

23

First, there are statements by Defendant Daniel Cardillo which explain or directly address his charged conduct in his purchase of 620 West Burke Avenue in Wildwood. Second, by far the larger portion, there are conversations about plans for some future type of real estate purchase in various settings among Cardillo and others, that did not come to fruition; no proposed testimony other than these transcripts from 2008-2009 illuminates these conversations.

The first category contains evidence that is intrinsic to the charged crime. Cardillo essentially recounts to the confidential informant certain steps he took to buy the property at 620 West Burke Avenue, and mentions that "Johnny" gave him the twenty percent down. He also discusses the possibility of engaging in future real estate transactions involving Ernesto Rodriguez. Cardillo's statement about not putting any money down for the 620 West Burke Avenue deal and getting "twenty percent profit right there" is probative of his knowledge and motive for participating in the conspiracy. The fact that he knew he would not be providing a down payment for the property suggests that he knew of the fraudulent scheme and joined the conspiracy knowing its objectives and the manner in which it was being

---

2009, as noted in Def. Memo. in Opp. at 1, n.1, and in the Gov't Br. at 5-7 (mentioning only conversations in 2008 and 2009 but not noting the mislabeling).

carried out. The context in which Cardillo mentions the
involvement of Leadbeater and Rodriguez also tends to show that
he had a conspiratorial relationship with both of them.

Such evidence is intrinsic because it is, in a manner
similar to a confession, a statement by the accused about his
own charged conduct. Assuming proper foundation for the
recordings and transcripts, such statements of Cardillo
(including statements of others for purposes of providing
context to Cardillo's statements) are admissible under Fed. R.
Evid. 801(d)(2)(A) as statements of a party-opponent, and they
are not subject to the constraints of Rule 404(b). Such
statements of the accused are not evidence of "other crimes or
wrongs" under Rule 404(b), because they are evidence of the same
crime. The two excerpts from the conversation between Cardillo
and the confidential informant on December 16, 2008 (see Tr. Dec
16, 7 & 20) are the prime examples of admissible intrinsic
evidence.[8]

---

[8] Although intrinsic evidence is not subject to requirements of
admissibility under Rule 404(b), the Court notes that the
probative value of the intrinsic evidence is not "substantially
outweighed" by the danger of unfair prejudice. See United States
v. Bergrin, 682 F.3d 261, 278 (3d Cir. 2012) (noting that "[a]s
long as evidence offered under Rule 404(b) satisfies [the]
criteria [of probativeness], we favor its admission." (citing
United States v. Johnson, 199 F.3d 123, 128 (3d Cir. 1999))).
The audio recordings are highly probative in demonstrating
Cardillo's knowledge of the fraudulent scheme and his
relationship with Leadbeater. United States v. Holck, 398 F.

Evidence from the December 11th and January 28th conversations above is not intrinsic. There is some talk with the informant about considering a purchase of one or more units at the Surf, and Cardillo speculates they'll split $10,000 on each unit. There is no reference back to Cardillo's purchase of 620 West Burke Avenue, so far as the Court can perceive.

As to the vast remainder of the proffered recordings, the Court does not discern a concrete "crime" or "bad act" that Cardillo was engaged in, and the remaining conversations are thus inadmissible under Rule 404(b). The Government has failed to demonstrate that the discussions and speculations about launching other real estate deals in the Wildwood area are admissible for a proper Rule 404(b) purpose. It is difficult to perceive what sort of scheme is being discussed among Cardillo and the confidential informant. Although the informant does most of the talking, it is unclear what is being contemplated. There is no apparent agreement to purchase any specified unit, no agreement about price, no application for a mortgage, no identification of a straw purchaser. If Cardillo's role in the charged conspiracy was to act as a straw purchaser, it seems clear he is not contemplating being the purchaser in the deals under consideration.

---

Supp. 2d 338, 371 (E.D. Pa. 2005) (noting that evidence that is highly probative is "exceptionally difficult" to exclude).

The Government has likewise failed to show how the evidence proves something other than propensity. United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014). These conversations do not have the required touchpoints of relevance to the charged offense for admissibility under Rule 404(b). The contemplated deals are murky and seem to involve methods and roles different from the conduct charged in the conspiracy. Not only is the deal unclear, but so is Cardillo's supposed role in the new crime. The potential seller is not agreeable to reducing his price to a level that the informant wants (and that is presumably necessary to enable a successful fraudulent transaction). In the December 11th conversation, neither Cardillo nor the CS has a "mortgage guy," and Cardillo observes that "mortgages are tight right now." (Tr. Dec 11, 2008 at 5.) Cardillo himself does not attend several key meetings that the informant has set up, citing his wife's schedule and, later, his baby's needs. Much of the sketch of the deal is painted by the informant, not by Cardillo. Where the proferred Rule 404(b) evidence, as here, occurs a year after the charged acts of Cardillo, such conduct must have more in common and be more specific in its intention than is the case here, before it can be probative of Cardillo's state of mind in the earlier transaction.

Even subsequent taped conversations in February and March of 2008 shed no light on Cardillo's intentions. For example, in

27

a February 9th call from the informant to Cardillo to set up a meeting with Ernie Gonzalez and a builder, Cardillo says he may have to miss the meeting and doesn't know whether he can be there. (Tr. Feb. 9, 2009 at 13.) Cardillo was more interested in short-selling his own unit. (Id.) Nothing is proferred as to whether any meeting took place or who attended on February 10th. Cardillo's voice is on none of the tapes thereafter, on February 19, 20, 21, 23 and March 4, 2009. In short, one is left to speculate what the deals involve, whether they involve fraud or merely attempts to get a good bargain and a finder's fee in a depressed real estate market, and most importantly whether Cardillo has a criminal intent.

To admit these conversations would require a substantial amount of other evidence not supplied by these tapes and perhaps non-existent, to demonstrate anything probative about Cardillo's knowledge, intent, lack of mistake or other state of mind from a year or more earlier in 2007. Even if it is possible to view Cardillo as contemplating a new fraudulent purchase in December 2007, the Government has not proffered evidence that would make that conclusion sufficiently certain to justify the connection of time at trial and the risk of confusion to the jury, and therefore this aspect of the Government's proffered evidence is inadmissible under Rule 404(b) and Rule 403.

28

In summary, the Government's motion to admit audio recordings from December of 2008 to March of 2009 will be granted in part. The identified portions of a conversation between Cardillo and the confidential informant on December 16, 2007 (Tr. at 7 and 20) constitute intrinsic evidence of Cardillo's own statements about the charged crime and are admissible. The remainder of the proffered audio recordings do not qualify for admissibility under Rule 404(b) and 403 and to that extent the Government's motion will be denied. Nothing herein precludes the use of these recorded conversations as impeachment material if Cardillo testifies at trial and opens the door to cross-examination on matters such as his knowledge, state of mind, or roles of alleged co-conspirators in the charged criminal conduct, and such determination must await developments at trial.

## IV.   CONCLUSION

An accompanying Order will be entered.


**May 27, 2015**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge